Saima Ali Gipson, Esq. (SBN 324752)
**EMPLOYEE JUSTICE LEGAL GROUP, PC**
1001 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 382-2222
Facsimile: (213) 382-2230
Email:   sali@ejlglaw.com

Attorneys for Plaintiffs,
LANCE BAIRD, FABIAN HUERTA, AND KOYAANA REDSTAR individually, and on behalf of a class of others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE BAIRD, FABIAN HUERTA, AND KOYAANA REDSTAR, individually and on behalf of a class of others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>CHARTER COMMUNICATIONS, INC. dba CHARTER COMMUNICATIONS (CCI), INC., a Delaware Corporation; and DOES 1-100,<br><br>                    Defendant. | Case No. 2:19-cv-10621-FLA-KS<br><br>*Assigned to the Hon. Fernando L. Aenlle-Rocha in Courtroom 6B*<br><br><u>**SECOND AMENDED CLASS ACTION**</u><br><br> **COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs Lance Baird, Koyaana Redstar, and Fabian Huerta ("Plaintiffs"), individually and on behalf of all others similarly situated ("the Class"), alleges, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1.      Defendant Charter Communications, Inc., dba Charter Communications (CCI), Inc. (hereinafter "Defendant") provides internet service to customers across the United States and the State of California under the branding name "Spectrum."

2.      In steep competition with Comcast and other internet providers, Defendant is forced to reinvent advertising to attract new customers to its service.

3.      One way Defendant draws in new customers in California is to offer "free" internet modems for use by customers in their homes.

4.      New customers then have the option for how they would like their new Spectrum internet service to be set up inside their homes. Defendant advertises that customers can either pay a professional to come to their home to install the service – which costs upwards of $50 – or they can self-install the service. Self-installing Defendant's internet service is, according to Defendant "quick and easy." All the customer needs is one of Defendant's "free" modems, or a modem of their own that will meet the technical specifications required to receive Defendant's service, and the "step-by-step" instructions included with the modem and available online through Defendant's website.

5.      Despite advertising that its modems are "free," Defendant charges a one-time self-installation "fee" for new customers of its internet service. In addition, many customers are required to physically travel out to Defendant's stores, pick up the modems, and return back to install the service themselves.

6.      Defendant also charges the one-time self-installation "fee" for new customers who opt to use their own modems.

7.      Defendant provides no service or anything of value in exchange for the

SECOND AMENDED CLASS ACTION COMPLAINT

one-time self-installation "fee."  Defendant misrepresents that the "fee" is being paid in exchange for anything of value – a fact which is not apparent at the point of sale.

8.      Defendant intentionally misrepresents its modems as being "free" for new customers.

9.      Defendant intentionally misrepresents that the self-installation "fee" is being paid in exchange for anything of value.

10.     Plaintiffs and the putative class purchased subscriptions for Defendant's internet service and paid a one-time self-installation fee in exchange for no service or value from Defendant.  Plaintiffs and the putative class were uniformly promised "free" use of Defendant's internet modems, but it is unclear whether the one-time fee actually went toward paying for use of Defendant's modem.

11.     Plaintiffs and the putative class were directly and uniformly damaged by Defendant's intentional misrepresentations.

## PARTIES

12.     Plaintiff Lance Baird is an individual resident of Los Angeles County, California.

13.     Plaintiff Koyaan Redstar is an individual resident of Los Angeles County, California.

14.     Plaintiff Fabian Huerta is an individual resident of Los Angeles County, California.

15.     Defendant is a Delaware corporation that is qualified to conduct business in the State of California.  Defendant operates dozens of physical stores throughout California, and advertises and markets its services directly to customers in California and in the United States.

16.     Plaintiffs do not know the true names and capacities of Does 1-100 and therefore uses fictitious names.  Plaintiffs will amend the complaint to allege the names and capacities when ascertained.

17.     Plaintiffs are informed and believe that Defendant, its contractors, agents,

SECOND AMENDED CLASS ACTION COMPLAINT

directly or else through other persons acting on its behalf, conspired to, agreed to, contributed to, assisted with, and/or otherwise caused all of the wrongful acts, defects, and omissions which are the subject matter of this complaint.

## JURISDICTION AND VENUE

18.    At all relevant times Plaintiffs were citizens and residents of Los Angeles County, California.

19.    Defendant is a for-profit corporation organized under the laws of Delaware with its principal place of business in Stamford, Connecticut.

20.    This Court has jurisdiction over the subject matter of this class action, which is properly filed in Los Angeles County, because Defendant's obligations and liability arose from business activities conducted, in large part, in Los Angeles County. Those business activities include purposefully availing itself of California's markets, including the Los Angeles County market, making false statements to consumers in Los Angeles County, and entering into fraudulent contracts with consumers in Los Angeles County.

21.    This Court has personal jurisdiction over Defendant because it is authorized to do business in California, which is a sufficient bases to render the exercise of jurisdiction by this Court permissible under notions of fair play and substantial justice.

## STATEMENT OF FACTS

22.    Plaintiff Lance Baird purchased internet service from Defendant on October 10, 2019, in the state of California.

23.    Plaintiff Koyaana Redstar purchased internet service from Defendant on August 29, 2019.

24.    Plaintiff Fabian Huerta purchased internet service from Defendant on August 16, 2019.

25.    Plaintiffs each made their decision to purchase internet service from Defendant based on Defendant's advertised rate for its service, including that there

would be no additional fee for his use of Defendant's internet modem with the internet service.

26.    Plaintiffs initially understood that the $9.99 fee for self-installation was being paid in exchange for something of value.  Only upon ordering the service, traveling to the store to pick up the modem or having it delivered, and having to set up their service did they understand that they had paid a fee in exchange for nothing of value.

27.    Defendant uniformly misrepresented to Plaintiffs and the putative class that use of its modems is "free," and that the $9.99 fee was required to be paid in exchange for something of value from Defendant.  If Defendant decided to charge $9.99 as a one-time rental fee for its modems, then it made a material misrepresentation by simultaneously claiming it was providing its modems for "free" and hiding the true nature of the $9.99 fee.  If Defendant was simply charging $9.99 for providing no service at all, it was charging a fee not authorized by law and making a material misrepresentation by deceiving Plaintiffs and the putative class that they would receive something of value in exchange for that fee.

28.    Plaintiffs and the putative class materially relied on Defendant's misrepresentations and were uniformly harmed by Defendant's conduct.  This is evident because many of Defendant's competitors did not provide "free" modems to their customers.  Thus, making such an offer was an additional value intended to and resulting in attracting additional customers to Defendant's service.  Further, the $9.99 fee was – depending on the internet package a customer purchased – as much as 22% of the monthly cost of the service being provided.  Thus, the fee was a significant expenditure when compared against the cost of the service itself making it, necessarily, a non-trivial expenditure.

29.    Defendant intended that customers would rely on its misrepresentations in deciding to purchase internet service for the price paid from Defendant by making misrepresentations at the point of sale.  Defendant's intent is manifested by its

ubiquitous promulgation of "free" modems in its advertising and its $9.99 presentation of its fee without any explanation of what the fee would actually be exchanged for. Defendant manifested its intent to hide the true nature of its fee by making it mandatory and by providing no explanation of what customers received in exchange for the fee – thereby preventing customers from realizing that they were getting nothing in exchange for the fee.

30.    Defendant's illegal conduct was the proximate and direct cause of Plaintiffs and the putative class's injuries.

31.    Plaintiffs will continue to have a desire and need for internet service throughout the foreseeable future as internet is a necessity of modern society.

32.    Defendant is still sending advertisements, via e-mail and/or mailers to their physical home addresses, to Plaintiffs, advertising their various products, from internet service deals to packages that include cable and cellular plans.

33.    Spectrum Internet is one of the only few internet service providers in Southern California.  "For most of Los Angeles, choosing an internet provider means choosing between two companies: Spectrum and AT&T."[1]

34.    Due to Defendant continued misrepresentation of its $9.99 fee for self-installation of Defendant's internet services in its advertising, Plaintiffs cannot confirm whether Defendant's future statements about its Spectrum internet service would in fact be true.

35.    Despite competitive pricing, Plaintiff Redstar, who is not a current Spectrum customer, cannot rely on the truth of Spectrum's current or future advertisements about its internet service when considering whether to switch internet service providers.

36.    Plaintiff Huerta is still currently using Spectrum's internet services. However, despite a desire to take advantage of competitive prices for bundling his

---

[1] *Internet Service Provider Options in Los Angeles,* Connect California, 2022, https://www.connectcalifornia.com/internet-service/los-angeles.

SECOND AMENDED CLASS ACTION COMPLAINT

home internet with other services from Spectrum, like cable or cellular plans, Plaintiff Huerta is unable to trust the veracity of Spectrum's statements about its other services when it is still misrepresenting the nature of its fees in advertising in relation to the $9.99 fee for self-installation.

## CLASS ACTION ALLEGATIONS

37.    This action is brought on behalf of the following classes:

      a.  Store Pickup Class:  All persons in California who purchased internet service from Defendant, and to whom Defendant promised "free" use of Defendant's internet modems, but were charged $9.99 to self-install Defendant's internet service.

      b.  Own Modem Class:  All persons in California who purchased internet service from Defendant, and were charged $9.99 to self-install Defendant's internet service.

38.    Excluded from the Classes are Defendant, its legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest.  Also, excluded from the Classes is the judge to whom this case is assigned, the Judge's immediate family, and Plaintiffs' counsel and their employees.  Plaintiffs reserve the right to amend the above-stated class definitions based on facts learned in discovery, as well as adding subclasses as the Court sees fit.

39.    Defendant is one of the largest internet service providers the united states. https://ir.charter.com/static-files/c6af1cf1-7a43-4c40-a6e4-86bf1dc31de3  (at  p.17). In 2018, Defendant added 1,300,000 internet customers.  (*Id.* at p.7).  Considering Defendant's sizeable footprint in California (*id.* at p. 9) the putative Class is so numerous that joinder of all members of the Class would be impractical.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include but are not limited to the following:

      a.  Whether Defendant's advertising of its modems as "free" amounted to

a material misrepresentation;

b.  Whether Defendant's $9.99 fee for self-installation amounted to a material representation when no goods or services were provided in exchange;

c.  Whether Defendant's conduct damaged Plaintiffs and the putative class and in what amount;

d.  Whether Defendant intended Plaintiffs and the putative class would rely on its misrepresentations in deciding to purchase its internet service;

e.  Whether Defendant negligently, willfully, and/or knowingly misrepresented the sale of its internet service to Plaintiffs and the putative class;

f.  Whether Defendant's conduct violated California's consumer protection laws;

g.  Whether a reasonable consumer would have relied on Defendant's advertising in deciding to purchase Defendant's internet service;

h.  Whether Defendant should be required to change its advertising practice and/or eliminate its $9.99 fee for self-installation of its internet service.

41.    Plaintiffs' claims are typical of the Class and within each subclass and are based on the same facts, legal theories and/or primary rights of all Class members, because Plaintiffs and each Class member were identically injured in paying $9.99 in exchange for nothing of value. The class action procedure is also superior to individual lawsuits due to the massive volume of potential individual lawsuits and the similarities that persist in each Class member's claims when compared against the predicted amount of recovery per Class member.

42.    Plaintiffs will adequately and fairly protect the interests of the Class and each subclass. They have retained counsel experienced in class action litigation.

1   Neither Plaintiffs nor their counsel have any interest that might cause them to not

2   vigorously pursue this action in the Class' and subclass' best interests.

3        43.    Certification of the Class and each subclass is proper under California's

4   Rules of Civil Procedure and Rules of Court.

5        44.    Plaintiffs and their counsel anticipate that notice to the proposed Class

6   will be effectuated by mailing notice to Defendant's internet service customers, whose

7   addresses Defendant maintains in the normal course.

8                    **FIRST CAUSE OF ACTION**

9   **(Negligent/Intentional Misrepresentation – *By Plaintiffs on behalf of the Class,***

10                  ***against Defendant and Does 1-100*)**

11       45.    Plaintiffs and the Class repeat and reallege each and every allegation

12  above as if set forth in full herein.

13       46.    Defendant made multiple, uniform, and material misrepresentations to

14  Plaintiffs and the Class; specifically, that use of its modems with its internet service

15  would be "free" when in fact it was not, and that the $9.99 fee was being paid in

16  exchange for something of value when in fact it was not.

17       47.    Defendant's misrepresentations were material in multiple respects.  First,

18  many of Defendant's competitors did not provide "free" modems to their customers.

19  Thus, making such an offer was an additional value intended to and resulting in

20  attracting additional customers to Defendant's service.  Second, the $9.99 fee was –

21  depending on the internet package a customer purchased – as much as 22% of the

22  monthly cost of the service being provided.  Thus, the fee was a significant expenditure

23  when compared against the cost of the service itself.

24       48.     Defendant intended that Plaintiffs and the Class would rely on its

25  multiple, uniform, and material misrepresentations manifested by its ubiquitous

26  promulgation of "free" modems in advertising and its $9.99 presentation of its fee

27  without any explanation of what the fee would actually be exchanged for.  Defendant

28  manifested its intent to hide the true nature of its fee by making it mandatory and by

SECOND AMENDED CLASS ACTION COMPLAINT

providing no explanation of what customers received in exchange for the fee – thereby preventing customers from realizing that they were getting nothing in exchange for the fee.

49.    Plaintiffs and the Class reasonably relied on Defendant's multiple, uniform, and material misrepresentations in purchasing Defendant's internet service as evidenced by the misrepresentations being present at the point of sale.

50.    Plaintiffs and the Class were and currently remain damaged as a proximate and direct result of Defendant's multiple, uniform, and material misrepresentations.

51.    Plaintiffs' and the Class' reasonable reliance on Defendant's multiple, uniform, and material misrepresentations were a substantial factor in causing their damages.

## SECOND CAUSE OF ACTION

**(Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. – By Plaintiffs on behalf of California Subclass, against Defendant and Does 1-100)**

52.    Plaintiffs and the Class repeat and reallege each and every allegation above as if set forth in full herein.

53.    Defendant made multiple, uniform, and material misrepresentations to Plaintiffs and the Class; specifically, that use of its modems with its internet service would be "free" when in fact it was not, and that the $9.99 fee was being paid in exchange for something of value when in fact it was not.

54.    Defendant's misrepresentations were material in multiple respects. First, many of Defendant's competitors did not provide "free" modems to their customers. Thus, making such an offer was an additional value intended to and resulting in attracting additional customers to Defendant's service. Second, the $9.99 fee was – depending on the internet package a customer purchased – as much as 22% of the monthly cost of the service being provided. Thus, the fee was a significant expenditure

SECOND AMENDED CLASS ACTION COMPLAINT

when compared against the cost of the service itself.

55.    Defendant intended that Plaintiffs and the Class would rely on its multiple, uniform, and material misrepresentations manifested by its ubiquitous promulgation of "free" modems in advertising and its $9.99 presentation of its fee without any explanation of what the fee would actually be exchanged for.  Defendant manifested its intent to hide the true nature of its fee by making it mandatory and by providing no explanation of what customers received in exchange for the fee – thereby preventing customers from realizing that they were getting nothing in exchange for the fee.

56.    Plaintiffs and the Class reasonably relied on Defendant's multiple, uniform, and material misrepresentations in purchasing Defendant's internet service as evidenced by the misrepresentations being present at the point of sale.

57.    Plaintiffs and the Class were and currently remain damaged as a result of Defendant's multiple, uniform, and material misrepresentations.

58.    That material misrepresentation to Plaintiffs and the Class was that a good (the modem) had characteristics and benefits (being "free") which it did not have in violation of California Civil Code § 1770(a)(5).

59.    The material misrepresentation to Plaintiffs and the Class was that a service (the one purportedly being offered in exchange for $9.99) had characteristics, uses and benefits that it did not have (it had no value whatsoever) in violation of California Civil Code § 1770(a)(5).

60.    Defendant violated California Civil Code § 1770(a)(9) by advertising its modems as "free" when it intended to and did charge customers for their use of the modems.

61.    Defendant violated California Civil Code § 1770(a)(9) by advertising its self-installation service as conveying something of value to customers when in fact it did not.

62.    Defendant violated California Civil Code § 1770(a)(14) by advertising its

SECOND AMENDED CLASS ACTION COMPLAINT

modems as "free" when it intended to and did charge customers for their use of the modems.

63.     Defendant violated California Civil Code § 1770(a)(14) by advertising its self-installation service as conveying something of value to customers when in fact it did not.

64.     Defendant violated California Civil Code § 1770(a)(19) by advertising its modems as "free" when it intended to and did charge customers for their use of the modems.

65.     Defendant violated California Civil Code § 1770(a)(19) by advertising its self-installation service as conveying something of value to customers when in fact it did not.

66.     Defendant's deceptive representations occurred in trade or commerce.

67.     Defendant's representation was unfair and deceptive resulting in an ascertainable economic injury to Plaintiffs and the Class.

68.     Plaintiffs sent notice to Defendant as required by California Civil Code § 1782, requesting Defendant cease its illegal actions.  Despite Plaintiffs' requests that Defendant stop its false advertising, stop charging customers $9.99 for self-installation, and refund all illegally gotten gains Defendant has refused to do so.

## THIRD CAUSE OF ACTION

**(Violation of California Business and Professions Code, Cal. Bus. & Prof. Code §§ 17200,** *et seq***. – By Plaintiffs on behalf of the Class, against Defendant and Does 1-100***)*

69.     Plaintiffs and the Class repeat and reallege each and every allegation above as if set forth in full herein.

70.     California Business and Professions Code §§ 17200, *et seq*., (hereinafter referred at the "UCL") prohibits unfair competition in the form of any unlawful, unfair or fraudulent business acts or practices.

71.     UCL section 17204 allows a person injured by the unfair business acts or

SECOND AMENDED CLASS ACTION COMPLAINT

practices to prosecute a civil action for violation of the UCL.

72.    Defendant made multiple, uniform, and material misrepresentations to Plaintiffs and the Class; specifically, that use of its modems with its internet service would be "free" when in fact it was not, and that the $9.99 fee was being paid in exchange for something of value when in fact it was not.

73.    The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of the UCL. Among other things, Defendant intentionally defrauded – through material misrepresentations – customers into selecting its service over the service of its competitors in order to gain a competitive advantage resulting in unfair competition in its industry.

74.    As a direct and proximate result of the aforementioned acts and practices, Plaintiffs and the Class have suffered a loss of money and property.

75.    UCL § 17203 provides a court may restore to any person in interest money or property which may have been acquired by means of such unfair competition. Plaintiffs and the Class are each entitled to restitution pursuant to UCL § 17203 for all monies improperly overpaid to Defendant in connection with their purchase of internet service during the four-year period prior to filing this Complaint.

76.    UCL § 17202 provides "notwithstanding section 3369 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition." Plaintiffs and the putative class are entitled to all applicable penalty provisions of the Labor Code pursuant to Business and Professions Code § 17202.

77.    Plaintiffs' success in this action will enforce the important rights affecting the public interest, and in that regard Plaintiffs sue on behalf of themselves as well as others similarly situated and, accordingly, pursuant to the UCL, this Court should make such orders or judgments as may be necessary to prevent continued fraud by Defendant of any unlawful or deceptive practices prohibited by the UCL, including but not limited

SECOND AMENDED CLASS ACTION COMPLAINT

to disgorgement of ill-gotten gains, which may be necessary to restore Plaintiffs and the Class the money Defendant has unlawfully obtained.

78.    Plaintiffs herein takes it upon themselves to enforce these lawful claims. There is a financial burden involved in pursuing this action, an action seeking to vindicate a public right, and it would be against the interest of justice to penalize Plaintiffs by forcing them and/or their class to pay other parties' attorney fees from the recovery in this action pursuant to California's Code of Civil Procedure §1021.5 and otherwise.

79.    Wherefore, Plaintiffs and the Class request relief as hereinafter provided.

## FOURTH CAUSE OF ACTION

### (Violation of California Business and Professions Code §§ 17500, *et seq. – By Plaintiffs on behalf of the Class, against Defendant and Does 1-100*)

80.    Plaintiffs and the Class repeat and reallege each and every allegation above as if set forth in full herein.

81.    Defendant made multiple, uniform, and material misrepresentations to Plaintiffs and the Class; specifically, that use of its modems with its internet service would be "free" when in fact it was not, and that the $9.99 fee was being paid in exchange for something of value when in fact it was not.

82.    Defendant's misrepresentations were material in multiple respects.  First, many of Defendant's competitors did not provide "free" modems to their customers. Thus, making such an offer was an additional value intended to and resulting in attracting additional customers to Defendant's service.  Second, the $9.99 fee was – depending on the internet package a customer purchased – as much as 22% of the monthly cost of the service being provided.  Thus, the fee was a significant expenditure when compared against the cost of the service itself.

83.    Defendant intended that Plaintiffs and the Class would rely on its multiple, uniform, and material misrepresentations manifested by its ubiquitous promulgation of "free" modems in advertising and its $9.99 presentation of its fee

SECOND AMENDED CLASS ACTION COMPLAINT

without any explanation of what the fee would actually be exchanged for.  Defendant manifested its intent to hide the true nature of its fee by making it mandatory and by providing no explanation of what customers received in exchange for the fee – thereby preventing customers from realizing that they were getting nothing in exchange for the fee.

84.    Plaintiffs and the Class reasonably relied on Defendant's multiple, uniform, and material misrepresentations in purchasing Defendant's internet service as evidenced by the misrepresentations being present at the point of sale.

85.    Plaintiffs and the Class were and currently remain damaged as a proximate and direct result of Defendant's multiple, uniform, and material misrepresentations.

86.    Wherefore, Plaintiffs and the Class request relief as hereinafter provided.

## **FIFTH CAUSE OF ACTION**

**(Unjust Enrichment –** *By Plaintiffs on behalf of the Class, against Defendant and Does 1-100***)**

87.    Plaintiffs and the Class repeat and reallege each and every allegation above as if set forth in full herein.

88.    Defendant uniformly misrepresented that use of its modems with its internet service would be "free" when in fact it was not, and that the $9.99 fee was being paid in exchange for something of value when in fact it was not.

89.    Defendant received such monies from Plaintiffs and the Class based, at least in part, on its misrepresentations.  Had Plaintiffs and the Class known or had reason to know that the misrepresentations were in fact false, they would have, at least, paid less monies to Defendant for the internet service.

90.    Defendant retained, and continues to retain, such monies that it received from Plaintiffs and the Class and as a result, has been unjustly enriched to the detriment of Plaintiffs and the Class.

///

SECOND AMENDED CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for relief as follows:

1.      Certification of Plaintiffs' class action claims;

2.      Designation of Plaintiffs as adequate class representative for the Class;

3.      Designation of Plaintiffs' counsel as Class Counsel;

4.      An award of actual, statutory, and/or punitive damages for to the extent recoverable by law;

5.      Injunctive relief requiring Defendant to stop falsely advertising its internet service, immediately;

6.      An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

7.      An award of attorneys' fees and costs according to proof pursuant to California Code of Civil Procedure section 1021.5 and Cal. Civ. Code §1780(e);

8.      Pre-judgment and post-judgment interest, as provided by law;

9.      Payment of a reasonable incentive award to Plaintiffs in recognition of services he has and will render in furtherance of all Class members' interests including the risks he is taking litigating this case; and

10.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury in this action.


DATED: April 18, 2022              **EMPLOYEE JUSTICE LEGAL GROUP, PC**

By: _____

Saima Ali Gipson, Esq.
Attorneys for Plaintiffs,
LANCE BAIRD, FABIAN HUERTA, AND
KOYAANA REDSTAR